T.C. Memo. 1997-541


UNITED STATES TAX COURT


PATRICIA WILLIAMS, a.k.a. PATRICIA RICHARDSON,
a.k.a. TISH MARTINSON, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 9143-96.                    Filed December 9, 1997.


Barry L. Guterman, for petitioner.

Edwin A. Herrera and Linas N. Udrys, for respondent.


MEMORANDUM OPINION

JACOBS, Judge: This matter is before the Court on petitioner's motion for award of litigation and administrative costs pursuant to section 7430[1] and Rule 231.

---

[1]  References to sec. 7430 are to that section as amended
                                        (continued...)

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the matter under consideration, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined the following deficiencies in, and additions to, petitioner's Federal income taxes:

| | | Additions to Tax | | | | |
|---|---|---|---|---|---|---|
| Year | Deficiency | Sec. 6651(a)(1) | Sec. 6653(a)(1)(A) | Sec. 6653(a)(1)(B) | Sec. 6653(a)(1) | Sec. 6654 |
| 1987 | $62,203 | $15,551 | $3,110 | [1] | --- | $3,359 |
| 1988 | 28,777 | 7,194 | --- | --- | $1,439 | 1,843 |
| 1989 | 78,170 | 19,543 | --- | --- | --- | 5,287 |

[1] 50 percent of the interest payable under sec. 6601 on the portion of the underpayment attributable to negligence or disregard of rules or regulations.

The underlying matter herein was resolved pursuant to a stipulation of settled issues filed with the Court on June 20, 1997. In the settlement, respondent conceded all deficiencies and

---

[1](...continued)
by sec. 1551 of the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2752 (applicable to all proceedings commenced after Dec. 31, 1985), and by sec. 6239(a) of the Technical and Miscellaneous Revenue Act of 1988, Pub. L. 100-647, 102 Stat. 3342, 3743-3747 (effective for all proceedings commenced after Nov. 10, 1988). Sec. 7430 was again amended by the Taxpayer Bill of Rights 2 (TBOR2), Pub. L. 104-168, sec. 701, 110 Stat. 1452, 1463-1464 (1996), effective for all proceedings commenced after July 30, 1996. The amendments to that section place on the Commissioner the burden of proving that the position of the United States was substantially justified. Sec. 7430(c)(4)(B).
    A judicial proceeding is commenced by the filing of a petition. Rule 20(a). Petitioner filed her petition on May 10, 1996. Accordingly, the amendments to sec. 7430 by TBOR2 are inapplicable here. See Maggie Management Co. v. Commissioner, 108 T.C. 430 (1997).

additions to tax for 1987 and 1988, and the parties agreed that petitioner was liable for a 1989 deficiency of $2,831 and an addition to tax pursuant to section 6651(a)(1) for 1989. The relevant facts are taken from the parties' submissions and the existing record.

At the time the petition was filed, petitioner resided in Rancho Mirage, California.

Background

In January 1989, the Internal Revenue Service (IRS) began an investigation of petitioner's failure to file Federal income tax returns for years 1982 through 1987. The investigation was later expanded to include 1988 and 1989.

Investigation by Revenue Officer Lepkojus

Revenue Officer Ted Lepkojus investigated petitioner from approximately December 18, 1990, to November 5, 1992. During the course of his investigation, Revenue Officer Lepkojus had difficulty locating petitioner due to her failure to file Federal tax returns and her use of several different names. Letters and postal tracers were sent to petitioner at her last known address, but these efforts proved unsuccessful in locating her. Her former attorney of record, Norman Axe, was also unsure of her whereabouts.

In March 1991, Revenue Officer Lepkojus was contacted by Michael Kazanjian who indicated that he had paid petitioner $124,000 in 1987 in exchange for her services as an interior

decorator. However, in a letter dated June 10, 1991, from Mr. Kazanjian's accountant, Revenue Officer Lepkojus was informed that the $124,000 was not for services rendered, but rather for petitioner's share in a real estate venture which was sold in 1987. In March 1991, Revenue Officer Lepkojus spoke with Dr. John Williams, petitioner's former husband, who stated that he had paid petitioner alimony during the years in issue.

In September 1991, Revenue Officer Lepkojus issued a summons for petitioner's bank records, and in October 1991 he received the records which included checks in large amounts.

On December 16, 1991, Revenue Officer Lepkojus obtained information relating to petitioner's residence in Los Angeles, California, and subsequently confirmed that address. Petitioner was not present when he visited the home on January 29, 1992.

Revenue Officer Lepkojus referred petitioner's case to the U.S. Department of Justice, Criminal Investigation Division (CID). The case was returned to him in November 1992, and shortly thereafter he forwarded it to the IRS examination division.

Examination by Revenue Agent Kropp

Revenue Agent David Kropp conducted an examination of petitioner for her unpaid Federal income taxes for 1987, 1988, and 1989. His investigation took place from approximately May 22, 1995, to October 10, 1995.

On May 22, 1995, Revenue Agent Kropp mailed a notice to petitioner scheduling an appointment for June 15, 1995. Neither petitioner nor a representative on her behalf appeared at the meeting.

Revenue Agent Kropp mailed a "30-day letter" dated September 5, 1995, to petitioner, along with his examination findings of unreported income for the years in issue. The 30-day letter stated that if petitioner disagreed with the findings, she could either: (1) Mail additional evidence or information; (2) request a discussion of the findings with the examiner; or (3) discuss her position with a group or senior manager. The letter further stated that if petitioner did not want to take any of these courses of action, she could either call or write the IRS within 30 days from the date of the letter.

On September 25, 1995, petitioner contacted Revenue Agent Kropp and informed him that she disagreed with the findings in the 30-day letter and would provide additional information to him.

On October 10, 1995, not having received any information from petitioner, Revenue Agent Kropp closed petitioner's case as "unagreed" and forwarded it to the appropriate section of the IRS for issuance of a notice of deficiency.

On October 26, 1995, petitioner retained Barry L. Guterman to represent her in the tax matters. On November 6, 1995, Mr. Guterman informed Revenue Agent Kropp of his retention by

petitioner and requested copies of the bank records he used as the basis of his findings. Mr. Guterman also requested additional time to file a written protest to the findings. On November 7, 1995, Revenue Agent Kropp advised Mr. Guterman that because petitioner had not furnished the information she promised, petitioner's case had been closed as unagreed and that the administrative file had been sent to the notices section of the Laguna Niguel district of the IRS. Mr. Guterman requested that the file be retrieved so that petitioner could provide the necessary information; but on December 15, 1995, Revenue Agent Kropp informed Mr. Guterman that a notice of deficiency was about to be issued and that petitioner's file would not be returnable to him (i.e., to Revenue Agent Kropp).

FOIA Request

On December 15, 1995, Mr. Guterman filed a Freedom of Information Act (FOIA) request with the IRS to determine the basis of Revenue Agent Kropp's examination adjustments. On or about April 16, 1996, Mr. Guterman received copies of petitioner's examination files, including a partially redacted investigation history, bank printouts, and bank deposit and withdrawal items for the years in issue. The exam work papers for 1989 stated that "All income is based on BDA [bank deposits analysis] done by Criminal Investigation Division from LA District: Deposits being added to income: $259,952." Similar work papers were prepared for 1987 and 1988.

Notice of Deficiency

On February 15, 1996, respondent issued a notice of deficiency to petitioner. The notice stated that upon conducting a bank deposit analysis of petitioner's City National Bank accounts, the Commissioner determined that petitioner failed to report taxable income of $167,693 in 1987, $85,204 in 1988, and $259,957 in 1989. On May 10, 1996, petitioner filed a petition with this Court, denying that she had any unreported taxable income during the years in issue. In the answer filed on June 24, 1996, respondent asserted that some of the bank deposit sources were verified.

Settlement Negotiations

In late July 1996, Mr. Guterman received a letter from Appeals Officer Steve Millang requesting a settlement conference for August 12, 1996. The meeting was never scheduled due to the fact that Mr. Guterman was awaiting the result of a bank deposit analysis conducted by Steve Slatkin, an expert retained by Mr. Guterman. Additionally, Mr. Guterman was awaiting the production of additional bank deposit documents in the IRS's possession. Appeals Officer Millang forwarded the additional documents to Mr. Guterman.

On or about September 24, 1996, Mr. Guterman wrote District Counsel Linas Udrys and requested the latter to obtain additional bank deposit information from the CID. On November 5, 1996, Appeals Officer Millang wrote Mr. Guterman advising that the CID

files contained no canceled checks, bank statements, or bank deposit slips.

A "Branerton letter", dated November 26, 1996, from District Counsel Udrys was sent to Mr. Guterman informing him that respondent was preparing for trial. The letter specifically requested any documentation in Mr. Guterman's possession that would demonstrate the nontaxable sources of petitioner's bank deposits. Mr. Guterman requested (and received) additional time to prepare answers to the Branerton letter questions and complete his own bank deposits analysis. By letter dated February 24, 1997, District Counsel Edwin Herrera again asked for Mr. Guterman's responses and bank deposit analysis. On March 13, 1997, Mr. Guterman forwarded his Branerton letter responses and bank deposit analysis to district counsel's office.

On April 30, 1997, following several telephone conferences between respondent and Mr. Guterman, Appeals Officer Millang formally offered a settlement proposal which subsequently led to the stipulation of settled issues.

Petitioner then sought reasonable litigation and administrative costs from respondent, which respondent rejected. On June 20, 1997, petitioner filed the instant motion for award of litigation and administrative costs.

Discussion

A taxpayer who is a prevailing party in an administrative or court proceeding may be awarded reasonable litigation and administrative costs incurred in such proceedings. Sec. 7430(a). A prevailing party is a taxpayer who establishes: (1) The position of the United States in the proceeding was not substantially justified; (2) the taxpayer substantially prevailed with respect to either the amount in controversy or on the most significant issues; and (3) the taxpayer's net worth does not exceed $2 million. Sec. 7430(c)(4)(a). Additionally, to recover costs the taxpayer must have exhausted his/her administrative remedies, sec. 7430(b)(1),[2] not have unreasonably protracted the proceedings, sec. 7430(b)(4), and demonstrated that costs incurred were reasonable, sec. 7430(c)(1) and (2).

Petitioner must establish all of the above requirements before this Court may award litigation and administrative costs under section 7430. Minahan v. Commissioner, 88 T.C. 492, 497 (1987). Petitioner has the burden of proof with respect to each requirement. Rule 232(e).

The parties primarily dispute whether respondent's position in both the administrative and judicial proceedings was substantially justified. Respondent also asserts that petitioner failed to exhaust her administrative remedies and claims that her costs were not reasonable.

---

[2] This requirement applies only to litigation costs.

Petitioner contends that respondent's position in both the administrative and litigation proceedings was not substantially justified. Specifically, petitioner claims that prior to the issuance of the notice of deficiency, respondent knew or had reason to know that a substantial portion of the bank deposits came from nontaxable sources, most notably nontaxable child care payments or property settlement proceeds. Petitioner further claims that the IRS lost or destroyed much of the evidence supporting these facts, thus forcing petitioner to prove her case again.

Disagreeing with petitioner, respondent asserts that from the district counsel's first involvement in this matter, diligent and reasonable efforts were made to verify petitioner's claims. Respondent further claims that the IRS's activity prior to district counsel's involvement is irrelevant in determining whether petitioner is entitled to reasonable litigation and administrative costs.

For the reasons set forth below, we shall deny petitioner's motion for award of litigation and administrative costs.

Respondent generally takes a position in a judicial proceeding upon the filing of the answer to the petition. Huffman v. Commissioner, 978 F.2d 1139, 1148 (9th Cir. 1992), affg. in part and revg. in part on other grounds, and remanding T.C. Memo. 1991-144. Respondent takes a position in an administrative proceeding as of the earlier of the date the taxpayer receives an IRS Appeals

decision or the date of the notice of deficiency. Sec. 7430(c)(7)(B). In Egan v. Commissioner, 91 T.C. 705, 711 (1988), and Sher v. Commissioner, 89 T.C. 79, 86 (1987), affd. 861 F.2d 131 (5th Cir. 1988), we held that the Court may only consider respondent's position and actions after the involvement of district counsel. These cases were legislatively superseded by section 7430(c)(7). Brice v. Commissioner, T.C. Memo. 1990-355, affd. without published opinion 940 F.2d 667 (9th Cir. 1991).

Respondent's position is substantially justified if that position could satisfy a reasonable person and if it has a reasonable basis in both fact and law. Pierce v. Underwood, 487 U.S. 552, 565 (1988); Swanson v. Commissioner, 106 T.C. 76, 86 (1996). We examine the facts known to respondent at the time the position was taken. Coastal Petroleum Refiners, Inc. v. Commissioner, 94 T.C. 685, 689 (1990). The fact that respondent eventually loses or concedes a case is not determinative of whether petitioner is entitled to reasonable litigation and administrative costs. Sokol v. Commissioner, 92 T.C. 760, 767 (1989).

We first consider whether respondent's position during the administrative proceeding was substantially justified. Respondent's position in the administrative proceeding was first established with the issuance of the notice of deficiency, dated February 15, 1996. The notice stated that petitioner's taxable income was being increased by the amount of bank deposits at City

National Bank due to "the absence of adequate records". It is not clear what information respondent possessed at the time the notice was issued. However, it is evident that such information was limited to information obtained from third party sources and witness statements (particularly those of petitioner's former husband John Williams and Mr. Kazanjian). Moreover, petitioner had yet to provide any information to respondent to corroborate the information given by others.

Furthermore, petitioner has not proven that the information possessed by respondent at the time the notice was issued would satisfy the hypothetical reasonable person that the bank deposits came from nontaxable sources. Although, as petitioner contends, respondent may have known about petitioner's divorce and the subsequent nontaxable property settlement and child care payments, there is no evidence that respondent had successfully matched the bank deposits with those sources. Additionally, there were many deposits that required explanation, and a determination of the amount of income (if any) petitioner received from rendering interior decorating services had to be made.

To be sure, it is not unreasonable for the Commissioner to require a taxpayer to corroborate his or her claims regarding dispositive and unresolved facts. Baker v. Commissioner, 83 T.C. 822, 830 (1984), vacated and remanded on another issue 787 F.2d 637 (D.C. Cir. 1986). The Commissioner is not required to concede a

case until petitioner provides the necessary documentation to prove petitioner's contentions.  See Brice v. Commissioner, supra.

In sum, we find that respondent's position during the administrative proceeding was substantially justified.

We now turn our attention to whether respondent's position in the judicial proceeding was substantially justified.  Respondent's position in the judicial proceeding first occurred with the filing of an answer to petitioner's petition on or about June 24, 1996. The position taken in respondent's answer was the same as in the notice of deficiency; i.e., respondent sought verification and corroboration of petitioner's bank deposit sources.

Because no new information was received between the time the notice of deficiency was issued (February 15, 1996) and the time the answer was filed (June 24, 1996), respondent's position in the answer was reasonable.  See Brantley v. Commissioner, T.C. Memo. 1995-564.  Moreover, respondent made diligent efforts to resolve this case, contacting petitioner regarding settlement discussions within 1 month of filing the answer.  One reason why settlement may not have been reached sooner than it was (in April 1997) was because of petitioner's request for additional time to complete her own bank deposit analysis and to gather more information from the Government.

After the notice of deficiency is issued, respondent may through district counsel independently verify a taxpayer's claims

before conceding issues and settling a case. <u>Sliwa v. Commissioner</u>, 839 F.2d 602, 609 (9th Cir. 1988). Respondent attempted this through both telephone conversations with Mr. Guterman and the Branerton letter. Petitioner has not suggested that respondent's actions after the issuance of the notice of deficiency were improper or in an effort to delay the proceedings. In fact, only 1-1/2 months after receiving petitioner's responses to respondent's Branerton letter and petitioner's own bank deposit analysis, respondent made a request to settle the case, and shortly thereafter respondent did in fact concede the majority of it. Cf. <u>Brantley v. Commissioner</u>, <u>supra</u>, and cases cited therein.

Although petitioner may have believed that the third party information obtained by the Government was sufficient to resolve this case, it was not enough to satisfy respondent in the exercise of reasonable judgment. We find that respondent's position during the judicial proceeding was substantially justified.

Because we hold that respondent's position was substantially justified in this case, we do not need to address whether petitioner exhausted her administrative remedies or whether the costs sought are reasonable.

To reflect the foregoing and the stipulation of settled issues filed June 20, 1997,

An appropriate order and decision will be entered.